ENOS L. JORDAN, petitioner, *vs.* SCHOOL DISTRICT No. 8, IN
CAPE ELIZABETH.

*School-house—location of.*

The phrase 'location of the lot' as used in R. S., c. 11, § 34, refers to the laying out of a school-house lot mentioned in § 33, and not to 'where the school-house shall be placed' mentioned in § 32.

Under R. S., c. 11, § 34, a jury has no authority to designate the place on which the school-house shall stand, but to fix the boundaries and price of the lot.

When the location has been legally designated, by the municipal officers, upon the land of a certain person, a jury, summoned under R. S., c. 11, § 34, on petition of the owner, cannot change the location to the land of another or to that of the district.

ON EXCEPTIONS..

MOTION to set aside the verdict of a jury summoned under R. S., c. 11, § 34, by the petitioner, upon the alleged ground that he was aggrieved on account of the location of a school-house upon his land in school-district, No. 8, in Cape Elizabeth, by the municipal officers of Cape Elizabeth, and on account of the damages awarded therefor.

So much of the report of Hon. J. H. Drummond, appointed to preside at the view and hearing, as is essential to this case, was as follows:

' The petitioner offered evidence tending to show that the location of the lot should be changed by the jury, from the petitioner's land to land owned by another person within the district. The counsel for the respondents objected, that it was not admissible, because the jury, under the statute, had no power to change the location from land owned by the petitioner to land owned by any one else; and I sustained the objection and excluded the evidence.

' The petitioner then offered evidence tending to show that the location should be changed from the land of the petitioner to the site owned by said district, and upon which the school-house in said district now stands. The respondents interposed the same objection and I excluded the evidence.'

At the April term, 1872, of this court, the petitioner moved the verdict be set aside because of the exclusion of the evidence offered. But the presiding judge overruled the motion and ordered the verdict to be confirmed; and the petitioner alleged exceptions.

*A. A. Strout*, for the petitioner.

―――― for the respondents, cited in addition to the statutes, *Merrill* v. *Berkshire Commrs.*, 11 Pick. 269; *Lanesboro* v. *Same*, 22 Pick. 278; *Gloucester* v. *Essex Commrs.*, 3 Met. 375; *School District* v. *Copeland*, 2 Gray, 414; and *Harris* v. *Marblehead*, 10 Gray, 40.

DANFORTH, J. This case involves the extent of the powers of a jury summoned under R. S., c. 11, § 34, to revise the doings of the municipal officers in locating a school-house lot, and assessing damages therefor.

The petitioner offered evidence before the jury, tending to show that the location should be changed from his own, to land of another party within the district, and the presiding officer excluded it. He then offered evidence tending to show that the location should be changed to land owned by the district and 'upon which the school-house now stands.' This was also excluded. These are the only rulings complained of. It is evident the two must stand or fall together, and may therefore be treated as one. There is nothing in the statute limiting the right of the jury to change the location to land of the district. If they can go beyond the land of the petitioner, they may locate anywhere within the limits of the district. To settle the right of the juries in such cases as the present, the section of the statute, under which they are summoned and from which they receive their authority, must be construed in connection with other sections of the same statute, relating to the location of school-houses. They are all found in R. S., c. 11. By § 24, the districts are to determine where their school-houses shall be located.' By § 32, 'if more than one-third of the voters present and voting object, the municipal officers,' upon certain conditions therein named, 'may decide where the school-house shall be placed.' It will be noticed that under this provision the officers simply decide upon the place where the house is to be, and do not fix the boundaries of the lot, or determine its size or shape. They place the school-house, but do not and cannot lay out the lot. This is left to be done by the district upon an agreement with the owner of the land. By § 33, other and distinct powers are conferred upon the municipal officers, viz., to lay out a school-house lot, not exceeding forty square rods, and appraise the damages,' etc. As a necessary condition, precedent to this power, it must appear as provided in the same section, that 'a location for the erection or removal of a school-house and necessary buildings has been legally

designated, and the owner thereof refuses to sell,' etc. This legal designation can be no other than that made by the district itself, or by the municipal officers on application from a minority of the voters. It would seem necessarily to follow, that the designation, having been legally made, could not be changed ; that the laying out contemplated by § 33 must be in the same place as that before determined upon, and authorizes only a fixing of the boundaries, shape, and size of the lot, with the price to be paid for it. The municipal officers, then, may, in certain contingencies, be called upon to do two separate and distinct things ; first, to designate the place where the house is to be built ; and, second, to lay out the lot and appraise damages. *Harris* v. *Marblehead*, 10 Gray, 40. These are not necessarily connected. The first may be done by the district, and when so done is final, unless an appeal is made by the minority, and if so, the action of the municipal officers is final and no appeal lies therefrom. The second must be done by the municipal officers, and from this there is an appeal as provided in § 34. By this section, ' if the owner is aggrieved at the location of the lot, or the damages awarded, he may, within one year, apply to the county commissioners, and have the matter tried by a jury, who may change the location and assess the damages.' Now the whole question depends upon the meaning of the word ' location ' as used in this section. Does it refer to the place decided upon as in § 32, or to the laying out referred to in § 33 ? If to the former, the whole matter of location is for them, and they may place the lot anywhere within the district. If to the latter, they are not only confined to the land of the petitioner, but must lay out the lot at the place designated by the municipal officers, and, in this respect, their duties are confined to such changes as may, in their judgment, render the location less inconvenient to the petitioner, having due regard to the interests of the district. If we are correct in our construction of the preceding sections, that the fixing of the place, by the district or on appeal by the municipal officers is final, then the language of § 34 must necessarily refer to what is done under § 33, and we have no authority for carrying the

appellate beyond the original jurisdiction. But there are other reasons which lead us to the same conclusion. The language used, ' aggrieved at the location of the lot,' applies with more fitness to the laying out under § 33, than to the place designated under § 32. The lot, as already seen under § 32, is left indefinite and uncertain as to its boundaries and shape. In the next section it is made definite and certain in all particulars, and the word location, connected with lot in § 34, would seem to imply a definite lot, certain in its bounds. But what is of still greater force, in this process only the owner of the land, on which the lot is located, and the district are parties, and if the jury are to change this location to land of other persons, then the rights of such persons are to be settled in a process to which they are not parties, and of which they have not and cannot have legal notice. The officer is only authorized to notify such as are parties, while the statute, by its reference to the proceedings in case of damages in laying out highways, requires not only that all interested shall be notified, but by necessary implication all such shall be parties to the process. It is true private property may be taken for public purposes without special notice, but damages can be assessed only after notice and hearing, and in this case the same process and notice is required to authorize the jury to change the location, as to assess the damages. The same doctrine is laid down in *Merrill* v. *Berkshire Commrs.*, 11 Pick. 269, and *Lanesboro* v. *Same*, 22 Pick. 278, cited by respondent's counsel.

It would seem, too, to be quite clear from the statute, that in all cases, before the jury can be called, the municipal officers must ' lay out a school-house lot, appraise the damages,' etc.

The district may determine the place, but if they cannot agree with the owner, the next and necessary step is to call on the municipal officers to lay out. But if the jury can go upon other land and locate anew, this provision of the statute is entirely disregarded. Still further, the statute, § 32, provides that if more than a third of the voters object to the place designated by the district, they may be heard upon an appeal to the municipal officers. But if the jury are to disregard the place thus fixed, then this provis-

ion is nullified, for it is very evident that a hearing of the minority before the jury is not contemplated. Hence, it clearly appears that the doctrine contended for by the petitioner, would not only subject parties to the injustice of having their rights settled in a process to which they are strangers, but involves the statute in numerous inconsistencies and irreconcilable contradictions. While if we confine the doings of the jury toa revision of the laying out of the lot and assessing damages, as contemplated in § 33, we give to the statute and all its parts that force and effect which its language requires, and render it consistent with well-settled principles of law, adopted to secure the rights of all parties. With this construction, the rulings complained of were sufficiently favorable to the petitioner, and the entry must be        *Exceptions overruled.*

APPLETON, C. J.; WALTON, DICKERSON, and BARROWS, JJ., concurred.